JAMES F. SHEA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HOWARD MORAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10654, 10101. Promulgated April 13, 1928.

*George P. Hoover, Esq.,* and *Laurence Graves, Esq.,* for the petitioners.

*M. N. Fisher, Esq.,* for the respondent.

560

LITTLETON : The facts in these proceedings are the same as the facts before the Board in the proceeding of *B. F. Saul et al.*, decided by the Board and reported in 4 B. T. A. 639, and from which facts we have found that the fair market value of the right of petitioners to subscribe for four shares of the Trust Company's stock for each share of bank stock sold by them to the Trust Company at the time of the transaction was $120 a share. In *B. F. Saul et al.*, *supra*, the Board said:

Although the Board is of the opinion that this transaction was a sale of stock by these taxpayers, it is not convinced that the profit realized by the stockholders of the Bank was the difference between the cost, or March 1, 1913, value of their stock, and $400 a share. Under the terms of the agreement hereinbefore referred to, the Bank transferred its business and assets to the Trust Company in consideration of the assumption by the Trust Company of the Bank's liabilities other than its liability to stockholders. Under this contract the consideration passing from the Trust Company to each Bank stockholder for his Bank stock was $400 a share and the right to subscribe for four shares of the Trust Company stock at $100 a share. Between January 1, 1919, and March 18, 1919, the Trust Company's stock was selling on the market at prices ranging from $220 a share to $222 a share. Between March 24 and June 10, 1919, the stock of the Trust Company was sold on the exchange at prices ranging from $233 a share to $243 a share. The right of each Bank stockholder to purchase four shares of the Trust Company's stock at $100 a share was a part of the consideration which the Trust Company agreed to pay for the Bank's stock, and the value of that right should be considered in measuring the profit realized by the Bank stockholders to the same extent as if it had been cash. The amount received by the Bank stockholders for their stock was, therefore, $400 a share, plus the value of the right to subscribe for four shares of the Trust Company's stock at par.

Under the provisions of the contract and under all of the evidence submitted, the Board is of the opinion that the fair market price or value of the right received by each Bank stockholder to subscribe to the Trust Company's stock at par was $120 a share. The result therefore is that the price received by each Bank stockholder for each share of Bank stock sold was $400, plus $480, the value of the right to subscribe for four shares of the Trust Company's stock, or $880 a share. This amount, less the cost or March 1, 1913, value of the Bank stock, which is not in dispute, is the proper measure of the profit per share of the Bank stock to each of these taxpayers.

These petitioners contend that the Board was correct in its opinion in the *Saul* case in holding that the transaction involved was a sale by the stockholders of the Bank of their stock to the Trust Company, but that the fair market value of the right of the Bank stockholders to subscribe for four shares of stock of the Trust Company for each share of the Bank stock sold should not have been considered in determining the profit to the Bank stockholders upon the sale of their stock to the Trust Company. The Board has considered the argu-

ment of counsel upon this point but can not agree with the claim advanced in these proceedings.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*